COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-145-CV

 

 

JAMES B. DAVIS                                                                 APPELLANT

                                                                                   AND
APPELLEE

 

                                                   V.

 

CITY OF GRAPEVINE                                                              APPELLEE

                                                                                 AND
APPELLANT

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant James B. Davis
(Davis) appeals the trial court=s granting of summary judgment in favor of Appellee, City of Grapevine
(the City).  The City cross-appeals the
trial court=s denial of
its objection to Davis= summary
judgment evidence.  In seven points,
Davis contends that the trial court erred in granting the motion for summary
judgment because the City (1) failed to meet its burden of showing that there
are no genuine issues of material fact, (2) failed to prove as a matter of law
that Davis could not perform the essential functions of the relevant positions,
with or without reasonable accommodations, (3) failed to prove as a matter of
law that Davis was not subjected to an adverse employment action, (4) failed to
prove as a matter of law that Davis is not legally disabled within the meaning
of Chapter 21 of the Texas Labor Code,[1]
(5) failed to prove as a matter of law that it offered Davis a reasonable
accommodation, (6) erroneously relied on the burden-shifting test set out in McDonnell
Douglas Corp. v. Green, which has no application to a failure to
accommodate claim, (7) has failed to prove that the accommodations that could
have been offered Davis were unreasonable as a matter of law, and (8) failed to
prove as a matter of law that Davis cannot establish an age discrimination
claim.  The City presents a single
cross-point asserting that Davis= controverting affidavit should be stricken.  We affirm in part and reverse and remand in
part.








 

FACTUAL BACKGROUND

Davis was formerly employed
as a firefighter by the City.  He was
diagnosed with multiple sclerosis. 
Doctor Susan Blue, a neurologist, treated Davis.  Doctor Blue sent a letter to the City
describing Davis= condition.  The letter stated that Davis had a mild
difficulty with balance, he would not consistently be able to climb ladders,
and he could not consistently be required to drive emergency vehicles.  She sent another letter to the City regarding
Davis= condition, explaining that although he is able to perform well on
many occasions, there could be instances where he would be limited in terms of
balance, rapid response ability, and coordination, and therefore, he should be
considered disabled in performing his duties as a firefighter and paramedic. 








Davis asserts that he was
forced to resign from working for the City, alleging discrimination due to his
disability and age.  He filed suit,
requesting relief under the Texas Commission on Human Rights Act.  See Tex.
Lab. Code Ann. ' 21.001-.556
(Vernon 1996).  He contends that his
supervisors refused to reassign him to another position and refused to offer
any other accommodation.  The City filed
a traditional motion for summary judgment, asserting that Davis could not
perform the essential functions of his position, he was not subject to an
adverse employment action, he was not legally disabled, the City offered Davis
a reasonable accommodation, the City had a legitimate, non-discriminatory
reason for not creating a new position for Davis, and Davis cannot establish an
age discrimination claim.  After a
hearing, the trial court granted the City=s motion for summary judgment and overruled the City=s objection to Davis= summary judgment proof.  This
appeal followed.

STANDARD OF REVIEW

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.  Clear
Creek Basin, 589 S.W.2d at 678.

If the uncontroverted
evidence is from an interested witness, it does nothing more than raise a fact
issue unless it is clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily
controverted.  Tex. R. Civ. P. 166a(c); Trico Techs. Corp. v. Montiel,
949 S.W.2d 308, 310 (Tex. 1997). 








A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).

CONTROVERTING AFFIDAVIT

In its cross-point,[2]
the City asserts that the controverting affidavit filed by Davis should be
stricken because the affidavit, which was written subsequent to Davis= deposition, contradicts prior deposition testimony without providing
an explanation for the changes.  We will
consider the City=s
cross-point before we consider the propriety of the trial court=s granting of summary judgment in order to determine whether the
affidavit can be considered as summary judgment proof. 








In his affidavit, signed on
January 26, 2005, Davis stated that A[w]hen [he] walk[s] fast or [tries] to run, [he] fall[s] down.@  Davis stated that he had these
conditions in the Spring of 2002.  The
City complains that the statement in the affidavit contradicts a statement
Davis made in his deposition, which was conducted six months earlier on July 28,
2004, because during the deposition testimony Davis stated that Awalking is okay@ during
March through June of 2002.  

Initially, during the
deposition, defense counsel framed the relevant time period to be March through
June of 2002.  Davis= deposition reveals the following pertinent testimony:

Q  Your walking was okay at that period of time.
At least the doctors note that you did that without difficulty.

 

A  Yes, walking is okay.

 

. . . .

 

Q  From that period of time say from June 2002
to today=s
date have any of those things changed that we=ve
just talked about, all of those basic like functions?

 

A  The dressing, the hygiene activities, the
walking, sitting, all those?

 

Q  Yes.

 

A  If I walk fast or run, I=ll
fall, stumble and fall, but walking in a normal pace, it=s
okay. 

 








It is well established that a
deposition does not have controlling effect over an affidavit in determining
whether a motion for summary judgment should be granted.  Randall v. Dallas Power & Light Co.,
752 S.W.2d 4, 5 (Tex. 1988); Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d
557, 562 (1962).  Thus, when a deposition
and an affidavit filed by the same party in opposition to a motion for summary
judgment conflict, a fact issue is presented that will preclude summary
judgment.  Randall, 752 S.W.2d at
5.  However, the City, relying on Farroux
v. Denny's Restaurants, Inc., 962 S.W.2d 108, 111 (Tex. App.CHouston [1st Dist.] 1997, no pet.), contends that the trial court
should have assumed that the affidavit was produced solely to avoid summary
judgment and should have refused to consider the contradictory portions as
evidence. 

In Farroux, the
Houston Court of Appeals held that the conflict between the deposition and
affidavit was so disparate as to amount to nothing but a Asham@ fact issue.
 Farroux, 962 S.W.2d at 111.  In the absence of an explanation for the
change in testimony, the court assumed the sole purpose of the affidavit was to
avoid summary judgment and merely presented a Asham@ fact
issue.  Id.  Interestingly, the Farroux court cited
only one federal court decision to support its opinion and failed even to mention
the Texas Supreme Court decisions of Gaines and Randall that are
directly on point and contrary to Farroux.  See id.








Following Farroux,
many courts of appeals have adopted the sham affidavit doctrine, and we note
that there is a conflict among Texas courts of appeals.[3]  We will adhere to our precedent and continue
to apply the rule set forth by the Texas Supreme Court in Randall that
when conflicting inferences may be drawn between a party=s summary judgment affidavit and his deposition on matters of material
fact, a fact issue is presented.  See
Hale v. Pena, 991 S.W.2d 942, 946-47 (Tex. App.CFort Worth 1999, no pet.). 
Therefore, we hold that the trial court did not err in overruling the
City=s objection to Davis= affidavit.  Accordingly, we
overrule the City=s
cross-point.

APPLICABLE LAW

Under the relevant portions
of section 21.051, 








[a]n
employer commits an unlawful employment practice if because of race, color,
disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual,
discharges an individual, or discriminates in any other manner against an
individual in connection with compensation or the terms, conditions, or
privileges of employment.

 

Tex. Lab. Code Ann. ' 21.051
(Vernon 1996).  Chapter 21 holds
employers liable only for discrimination that occurs Abecause of or on the basis of a physical or mental condition that does
not impair an individual=s ability to
reasonably perform a job.@  Id. ' 21.105.  

One of the purposes behind
chapter 21 is to provide for the execution of the policies embodied in Title I
of the Americans with Disabilities Act of 1990 (ADA)[4]
and its subsequent amendments.  Id. ' 21.001(3); see Haggar Apparel Co. v. Leal, 154 S.W.3d 98, 100
(Tex. 2004).  Because Chapter 21 seeks to
promote federal civil rights policy, it is proper to look to analogous federal
precedent.  Little, 148 S.W.3d at
382; Morrison v. Pinkerton Inc., 7 S.W.3d 851, 854 (Tex. App.CHouston [1st Dist.] 1999, no pet.). 
Accordingly, Texas courts follow federal precedent for guidance when
interpreting Chapter 21.  Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001). 








Generally, to prevail on a
discrimination claim under the ADA, a plaintiff must prove (1) that he has a Adisability@, (2) that he
is Aqualified@ for the
job, and (3) that an adverse employment decision was made solely because of his
disability.  Turco v. Hoechst Celanese
Corp., 101 F.3d 1090, 1092 (5th Cir. 1996). 
Here, Davis asserts that he was subjected to two types of adverse
employment actions because the City failed to make a reasonable accommodation
and because the City constructively discharged him. 

CLAIM FOR REASONABLE
ACCOMMODATION

Davis asserts that the trial
court improperly granted summary judgment in favor of the City on his claim
that the City failed to provide a reasonable accommodation for his
disability.  In his sixth point, Davis
contends that the burden-shifting test as set fort by McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) has no application to a
failure-to-accommodate claim.  We will
discuss this point as we set forth the law relating to a claim that an employer
failed to make a reasonable accommodation.

1.  Does the McDonnell Douglas
Burden-Shifting Test Apply to a Claim that the Employer has Failed to Make
Reasonable Accommodations?

 








The United States Supreme
Court, in two decisive cases, has carefully outlined the allocation of the
burdens of proof and production that apply to Title VII discrimination cases.  See Tex. Dep't of Cmty. Affairs v. Burdine,
450 U.S. 248, 252-56, 101 S. Ct. 1089, 1093-95 (1981); McDonnell Douglas
Corp., 411 U.S. at 802-05, 93 S. Ct. at 1824-26 (1973); see also Tex.
Dep't of Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995).  Key to the overall resolution of the instant
dispute is the Court=s holding
that A[t]he ultimate burden of persuading the trier of fact that the
defendant intentionally discriminated against the plaintiff remains at all
times with the plaintiff.@ Burdine,
450 U.S. at 253, 101 S. Ct. at 1093.  As
the Court explained, however, the intermediate burdens of production alternate
between the plaintiff and the defendant and serve to eliminate claims at an
earlier stage if no fact dispute exists that requires the court or jury to
reach this ultimate question.  Id. at
253‑55, 101 S. Ct. at 1093‑95.








The test set forth in McDonnell
Douglas requires the plaintiff to first demonstrate a prima facie case of
discrimination, and if the plaintiff is successful, the burden of production
shifts to the defendant employer to show a legitimate and nondiscriminatory
basis for the adverse employment decision. 
McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.  If the defendant employer demonstrates a
nondiscriminatory reason for its employment action, the plaintiff must show
that the defendant=s proffered
reason is merely a pretext. Id.at 804, 93 S. Ct. at 1825; see also
Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1087 (5th Cir. 1994) (applying
McDonnell Douglas test); Vaughn v. Edel, 918 F.2d 517, 521 (5th
Cir. 1990) (same).








For a plaintiff to establish
a prima facie case of discrimination based on an employer=s failure to provide a reasonable accommodation, the plaintiff must
show:  (1) that he is an individual who
has a disability within the meaning of the ADA; (2) that an employer covered by
the statute had notice of his disability; (3) that with reasonable
accommodations he could perform the essential functions of the position;[5]
and (4) that the employer has refused to make such accommodations.  See, e.g., Rhoads v. F.D.I.C., 257
F.3d 373, 387 n.11 (4th Cir. 2001); Stone v. City of Mt. Vernon, 118
F.3d 92, 96‑97 (2d Cir. 1997), cert. denied, 522 U.S. 1112 (1998);
Bultemeyer v. Fort Wayne Cmty. Schs., 100 F.3d 1281, 1284-85 (7th Cir.
1996). 

Section 12112(b)(5)(A) of the
ADA states that Aunless [the
employer] can demonstrate@ an undue
burden, it may not discriminate.  42
U.S.C.A. '
12112(b)(5)(A).  Likewise, Chapter 21 of
the Texas Labor Code mandates that it is an unlawful employment practice for an
employer to fail to make a reasonable accommodation, unless the employer Ademonstrates that the accommodation would impose an undue hardship on
the operation of the business. . . .@  Tex. Lab. Code Ann. ' 21.128.  Thus, under the ADA
and Chapter 21, the employee has the burden to show that the employer failed to
implement a reasonable accommodation, and the employer can defend by showing a
business necessity or undue burden.  Riel
v. Elec. Data Sys. Corp., 99 F.3d 678, 681 (5th Cir. 1996); see 42
U.S.C.A. '
12112(b)(5)(A); Tex. Lab. Code
Ann. ' 21.128.








The Seventh Circuit has
determined that the McDonnell Douglas burden-shifting test is
inappropriate in situations where the plaintiff alleges that he was a qualified
individual with a disability and his employer has refused to make a reasonable
accommodation.  Bultemeyer, 100
F.3d at 1283-84.  The Seventh Circuit
reasoned that if the plaintiff proved the elements alleged, he would establish
a direct violation of the ADA, and thus, there is no need for indirect proof
and burden-shifting.  Id.  The Seventh Circuit=s reasoning is consistent with the precedent set forth by the United
States Supreme Court, because the McDonnell Douglas test is inapplicable
where the plaintiff presents direct evidence of discrimination.  See Trans World Airlines, Inc. v. Thurston,
469 U.S. 111, 121, 105 S. Ct. 613, 621-22 (1985) (stating that the method of
proof set forth in McDonnell Douglas ensures that the Aplaintiff has his day in court despite the unavailability of direct
evidence@).  We hold that the
McDonnell Douglas burden-shifting test does not apply to a claim that the
employer has failed to make a reasonable accommodation.  Accordingly, we sustain Davis= sixth point.

2.  Is Davis an Individual with a Disability
within the Meaning of Chapter 21?

 








In his fourth point, Davis
contends that he is a person with a disability under Chapter 21 and that the
City has failed to prove as a matter of law that he does not suffer from a
substantial impairment affecting a major life activity. Davis contends that he
is disabled within the meaning of Chapter 21 because his multiple sclerosis
substantially limits him in a number of major life activities, including
walking, running, lifting,[6]
climbing stairs, and working.  He asserts
that he is substantially limited in walking as compared to the average person
because he cannot walk fast without falling down.  In addition to being limited in walking, he
also contends that he is substantially limited in running because he cannot run
without falling down. 

The City asserts that Davis
was not legally disabled during the relevant time period because his deposition
testimony proves as a matter of law that Davis did not suffer a disability or
physical impairment that substantially limited a major life activity.  The City argues that running is not a major
life activity that is Acentral to
daily life.@  The City further contends that Davis was not
disabled because at the time of the alleged adverse employment action, the
evidence conclusively proves that Davis could 
care for himself, perform manual tasks, stand, sit, eat, walk, lift
objects (without any lifting restriction), see, hear, speak, read, breathe,
learn, drive (around pedestrians and school children), and work full-time,
which are all major life activities. 








Under Chapter 21, disability
means, Awith respect to an individual, a mental or physical impairment that
substantially limits at least one major life activity of that individual, a
record of such an impairment, or being regarded as having such an impairment.@  Tex. Lab. Code Ann. ' 21.002(6).  This language
tracks the definition of disability under the ADA.  See 42 U.S.C.A. ' 12102(2). Two potential sources of guidance for interpreting the
terms of this definition include the regulations interpreting the
Rehabilitation Act of 1973[7]
and the EEOC regulations interpreting the ADA.  Toyota Motor Mfg., Ky., Inc. v. Williams,
534 U.S. 184, 193-94, 122 S. Ct. 681, 689 (2002). 

Merely having an impairment
does not make one disabled under the ADA. 
Id. at 195, 122 S. Ct. at 690. 
An ADA claimant must show that his impairment limits a major life
activity.  Id.  AMajor life activities@ includes functions such as Acaring for oneself, performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning, and working.@  29 C.F.R. ' 1630.2(I) (2005).

The claimant must further
show that the limitation on the major life activity is Asubstantial.@  Toyota Motor, 534 U.S. at 195, 122 S.
Ct. at 690.  Substantially limits means:

(i)
Unable to perform a major life activity that the average person in the general
population can perform; or

 

(ii)
Significantly restricted as to the condition, manner or duration under which an
individual can perform a particular major life activity as compared to the
condition, manner, or duration under which the average person in the general
population can perform the same major life activity.

 








29 C.F.R. ' 1630.2(j)(1)(i), (ii).  Whether
an impairment substantially limits a major life activity is determined in light
of (1) the nature and severity of the impairment, (2) its duration or expected
duration, and (3) its permanent or expected permanent or long‑term
impact.  Id. ' 1630.2(j)(2). 

To determine if Davis has
presented facts that indicate he has a disability within the meaning of Chapter
21, we first examine whether his impairment is one that substantially limits
any major life function other than working. 
Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir.
1999).  Only if there is no evidence of
impairment to the other major life functions is an impairment to working
considered.  Id.  To determine whether an individual is
substantially limited in a major life activity, the court must conduct an
individualized inquiry.  Sutton v.
United Air Lines, Inc., 527 U.S. 471, 483, 119 S. Ct. 2139, 2147
(1999).  This list is not exhaustive,
intending only to illustrate the types of activities that are of Acentral importance to daily life.@  Toyota Motor, 534 U.S.
at 197, 122 S. Ct. at 691.








Davis complains of an
impairment to his ability to walk.  Few
cases exist that define what constitutes a substantial limitation on a person=s ability to walk, however, it is clear that moderate difficulty
experienced while walking does not rise to the level of a disability.  Talk, 165 F.3d at 1025.  In Talk, the plaintiff complained that
she Awalk[s] with a limp and move[s] at a significantly slower pace than
the average person@ but her
orthopedic shoe allowed her to maintain full mobility.  Id. 
The Fifth Circuit determined that although the plaintiff exhibited some
impairment in her ability to walk, this impairment did not rise to the level of
substantial impairment as required by the ADA and Chapter 21.  Id.

In Kelly v. Drexel
University, the plaintiff suffered from severe post‑traumatic
degenerative joint disease of the right hip, which he stated limited him to
walking no more than a mile or so and caused him to walk more slowly when
climbing stairs.  94 F.3d 102, 106 (3rd
Cir. 1996).  After reviewing relevant
EEOC guidelines, the court concluded that this impairment did not amount to a
disability because it did not substantially limit him in the relevant life
activity of walking.  Id. at
106-07.[8]









Davis contends that because
he cannot walk fast without falling down, while the average person can do so,
he is substantially limited in his ability to walk as compared to the average
person.  In his affidavit, Davis stated
that Awhen [he] walks fast or [tries] to run, [he] fall[s] down.@  During his deposition, when
questioned about his ability to walk, he stated that Awalking is okay.@  He later stated in his deposition that if he Awalk[s] fast or runs, [he will] stumble and fall, but walking in a
normal pace [is] okay.@  A letter written by Dr. Blue states that
Davis had mild problems with balance.  We
hold that, although Davis experiences some impairment in his ability to walk,
it does not rise to the level of a substantial impairment as required by the
ADA and Chapter 21.








Davis also contends that he
is substantially limited in his ability to run. The main authority for
considering running as a major life activity comes from the Supreme Court.  In Sutton v. United Airlines, a
majority of the court held that disabilities should be evaluated using
mitigating measures such as eyeglasses or medication.  Sutton, 527 U.S. at 488, 119 S. Ct. at
2149.  The dissenters argued that such an
approach would mean that individuals who used prosthetic devices or wheelchairs
would not meet the statutory definition of disability in the ADA.  Id. at 495, 119 S. Ct. at 2152 (Stevens,
J., dissenting).  The majority opinion,
in dicta, stated that this argument was incorrect, explaining that Aindividuals who use prosthetic limbs or wheelchairs may be mobile and
capable of functioning in society but still be disabled because of a
substantial limitation on their ability to walk or run.@  Id. at 488, 119 S. Ct.
at 2149 (emphasis added).  While this
statement does not officially enshrine running as a major life activity, at
least two courts have taken the position that running is a major life activity.
 See Prince v. Claussen,
No. 98‑1064, 1999 WL 152282, at *5 (10th Cir. 1999) (unreported)[9]
(stating that the plaintiff Amaintains his impairments have implicated his ability to walk, stand,
run, lift, throw, squat, and work.  Each
constitutes a major life activity under the ADA.@); Morrison, 7 S.W.3d at 856 (holding that running is a major
life activity under the ADA).













Other courts have determined
that running is not a major life activity. 
See  Barnes v. Nw. Iowa
Health Ctr., 238 F. Supp. 2d 1053, 1073 n.7 (N.D. Iowa 2002) (noting that
the plaintiff did not assert that recreational running, bowling, golfing, and
engaging in social activities are Amajor life activities,@ and that such an argument would not be meritorious); Ruggles v.
Keebler Co., 224 F. Supp. 2d 1295, 1301 (D. Kan. 2002) (determining that
running is not a major life activity);  Mickelsen
v. Albertson=s, Inc., 226 F. Supp. 2d 1238, 1250 (D. Idaho 2002) (holding that although
the plaintiff asserted that she could no longer engage in the recreational
activities of running and bicycling, she cites to no evidence that she was
severely restricted from doing any activities of central importance in most
people=s lives); Fornes v. Osceola County 
Sheriff=s Office, No. 604CV1124ORL31DAB,  2005
WL 2012285, at *3 (M. D. Fla. Aug. 17, 2005) (concluding that running and other
strenuous activities do not qualify as major life activities because, unlike
the examples provided by the regulations, including hearing, speaking,
breathing, and walking, strenuous physical activities simply are not of central
importance to most people=s daily
lives); Dicino v. Aetna U.S. Healthcare, No. Civ. 01‑3206(JBS),
2003 WL 21501818, at *7 (D. N.J. June 23, 2003) (holding that running is not a
major life activity because it is not an activity that an ordinary person
engages in on a regular basis and is not of central importance to most people=s daily lives);  Billings v.
Taylor Royall, Inc., Nos. CIV. AMD 99‑1187, CIV. AMD 99‑1189,
2000 WL 490734, at *4 (D. Md. Apr. 11, 2000) (noting that running and Ahaving a capacity for physical exertion@ are not included among major life activities); Vaughnes v. United
Parcel Serv., Inc., No. 97Civ.5849(SHS), 2000 WL 1145400, at *5 (S.D.N.Y.
Aug. 14, 2000) (holding that A[r]unning is simply not of comparable importance and significance to
such listed activities as caring for oneself, breathing, working, and learning,
and therefore cannot be considered a major life activity@); see also Black v. Roadway Express, Inc., 297 F.3d
445, 450 (6th Cir. 2002) (reviewing plaintiff=s complaint that he was Aunable to run or jog at all@ and determining that many of the activities that the plaintiff
complained that he was substantially limited in were not regarded as major life
activities, without expressly stating that running did not constitute a major
life activity). 








Having reviewed these cases,
we conclude that running does constitute a major life activity within the
meaning of the ADA and Chapter 21.  The
Supreme Court has stated, albeit in dicta, that Aindividuals who use prosthetic limbs or wheelchairs may be mobile and
capable of functioning in society but still be disabled because of a substantial
limitation on their ability to walk or run.@  Sutton, 527 U.S. at
488, 119 S. Ct. at 2149 (emphasis added). 
We are also persuaded by the fact that the list of Amajor life activities@ included in the regulations, listing functions such as Acaring for oneself, performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning, and working,@ is not intended to be exhaustive. 
See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 n.7
(5th Cir.1995) (citing 29 C.F.R. ' 1630.2(i) and noting that the list is not intended to be exhaustive).  Accordingly, we hold that running constitutes
a major life activity under Chapter 21. 
Because Davis presented competent controverting evidence raising a
genuine issue of material fact with regard to whether he has a physical
impairment that substantially limits his ability to run, the City has failed to
prove as a matter of law that Davis is not legally disabled.  Accordingly, we sustain Davis= fourth point.

3.  Could Davis Perform the Essential Functions
of His Position With or Without Reasonable Accommodations?

 








In his second point, Davis
asserts that the City failed to prove as a matter of law that he could not
perform the essential functions of the relevant positions, with or without
reasonable accommodations.  In its motion
for summary judgment and on appeal, the City asserts that Davis could not
perform the essential functions of his position, stating that Davis Aadmittedly could not perform the essential functions of the position
from which he resigned, and thus is not entitled to file suit under [Chapter
21].@  In response, Davis argues that
the relevant issue is not whether he could perform all the duties of his
firefighter/paramedic job, but whether he could perform the duties of the job
with reasonable accommodations.  Davis
asserts that the City could have reasonably accommodated him by assigning him
to light-duty work in his firefighter/paramedic job or by transferring him to
another job within the city. 

An otherwise qualified person
is Aone who is able to meet all of the program=s requirements in spite of his handicap.@  Turco, 101 F.3d at 1093
(quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir.
1993)).  To avoid summary judgment, Davis
needed to show either that he could perform the essential functions of the job
in spite of his disability, or that a reasonable accommodation of his
disability would have enabled him to perform the essential functions of the
job.  See Turco, 101 F.3d at
1093.  It is uncontested that Davis could
not perform the essential functions of his firefighter/paramedic job despite
his disability.  The ADA defines Areasonable accommodation@ as 

(A)
making existing facilities used by employees readily accessible to and usable
by individuals with disabilities; and 

 

(B)
job restructuring, part‑time or modified work schedules, reassignment to
a vacant position, acquisition or modification of equipment or devices, appropriate
adjustment or modifications of examinations, training materials or policies,
the provision of qualified readers or interpreters, and other similar
accommodations for individuals with disabilities. 

 








42 U.S.C.A. ' 12111(9).  The plaintiff is
required to demonstrate, as part of his prima facie case, that an accommodation
of his disability exists and that such accommodation is reasonable.  See Riel, 99 F.3d at 683.  The burden of production is not a heavy one
and merely entails demonstrating the existence of a plausible accommodation, Athe costs of which, facially, do not clearly exceed its benefits.@  Borkowski v. Valley Cent.
Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995).

Davis relies upon Burch v.
City of Nacogdoches, 174 F.3d 615 (5th Cir. 1999), to support his position
that he could perform the essential functions of his firefighter/paramedic
position with reasonable accommodation. 
Burch was a firefighter who was injured on the job.  Id. at 616.  Due to the nature of his injury, Burch could
not perform the essential functions of his firefighter position.  Id. at 619-20.  He asserted that the city discriminated
against him on account of his disability because the city did not offer him a
light-duty position, and he further alleged that the city had allowed injured
firefighters to assume light-duty positions in the past or had transferred
these injured firefighters to other positions working for the city.  Id. at 618, 620.  The court held that the city was not required
to accommodate Burch in his position as a firefighter because the ADA does not
require an employer to relieve an employee of any essential functions of his or
her job, modify those duties, reassign existing employees to perform those
jobs, or hire new employees to do so.  Id.
at 621. 








Davis relies on language
found in a footnote of the Burch opinion to support his contention that
he could perform the essential functions of the firefighter/paramedic position
with a reasonable accommodation because the City assigned other
firefighter/paramedics to light-duty jobs on a long-term basis, while denying
such an assignment to Davis.  In this
footnote, the Fifth Circuit stated that Ahad Burch shown that the [c]ity treated him differently from others
similarly situated by not reassigning him under identical conditions, his
position on appeal would have been much stronger.@  Id. at 621 n.11.  We agree with Davis that the City could have
reasonably accommodated him by assigning him to a light-duty
firefighter/paramedic position, as the City did for another
firefighter/paramedic who had been diagnosed with multiple sclerosis.  Although Davis has failed to prove that the
light-duty firefighter position was available, he has provided evidence that
the City had accommodated other firefighter/paramedics in the past by assigning
them to light-duty jobs, and the City acknowledges that it had transferred
these firefighter/paramedics to light-duty positions. 








The City asserts that Davis= reliance on Burch for the contention that  he suffered an adverse employment action in
that the City did not create a light-duty position for him is misplaced,
because the conditions in the City at the time that Davis= employment ended were not identical to those in place when two other
employees were assigned to light-duty positions, as required by Burch.  The City argued that it was under severe
budget constraints at the time that Davis requested reassignment to a
light-duty firefighter/paramedic position, and thus, did not have the funds to
create such a position.  We perceive this
contention to be a defense to the City=s duty to provide a reasonable accommodation; therefore, it will be
discussed below.  See Tex. Lab. Code Ann. ' 21.128.  Thus, we hold that the
City failed to prove as a matter of law that Davis could not perform the
essential functions of his position with a reasonable accommodation.  Accordingly, we sustain Davis= second point.

 

4.  Did the City Prove as a Matter of Law that
Davis was Not Subjected to an Adverse Employment Action in that the City
Refused to Make a Reasonable Accommodation?

 

In his third point, Davis
makes two assertions in arguing that he was subject to an adverse employment
action.  One of the assertions is that
the City  refused to make a reasonable
accommodation for his disability.  His
second assertion, that the City subjected him to an adverse employment action
by constructively discharging him, will be discussed later in this
opinion.  








The summary judgment proof
shows that the City did not create a light-duty firefighter/paramedic position.
Davis also asserts that he was subject to an adverse employment action because
he was not transferred to an open telecommunications position.  Davis contends that, in order to reasonably
accommodate him, the City was required to transfer him to the open
telecommunications position.  Davis presented
summary judgment proof that a job for which he was qualified, the telecommunications
position, was available, yet the City required him to submit to an application
process. 

The literal language of the
ADA defines the term Areasonable
accommodation@ to include Areassignment to a vacant position.@  See 42 U.S.C.A. ' 12111(9).  The statute does not
say Aconsideration of a reassignment to a vacant position.@  Smith v. Midland Brake,
Inc., 180 F.3d 1154, 1164 (10th  Cir.
1999).  The Tenth Circuit concluded that A>reassignment= must mean
something more than the mere opportunity to apply for a job with the rest of
the world.@  Id.  
The D.C. Circuit also concluded that the word Areassign@ must mean
more than allowing an employee to apply for a job on the same basis as anyone
else because the core word Aassign@ implies
some active effort on the part of the employer. 
Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1304 (D.C. Cir. 1998). 

We acknowledge that the City
did provide Davis with a letter of recommendation to the open telecommunications
position; however, Davis was told that he would have to submit an application
to be considered for this position, which he did.  Thus, we hold that the City failed to prove
as a matter of law that Davis cold not perform the essential functions of his
position with a reasonable accommodation. 
We next address whether the employer can demonstrate that such an
accommodation would impose an undue hardship.








5.  Undue Burden

Chapter 21 provides that it
is an unlawful employment practice for an employer to fail to make a reasonable
accommodation for an employee, unless the employer can demonstrate that such an
accommodation would impose an undue hardship. 
Tex. Lab. Code Ann. ' 21.128.  Here, the City never
asserted that transferring Davis to the open telecommunications position would
be an undue burden, but the City has put forth evidence to show that creating a
new light-duty firefighter position would be an undue burden. 








The assertion that an
accommodation would be an undue burden for the employer is an affirmative
defense.  Riel, 99 F.3d at
682.  The City never moved for summary
judgment regarding their claim that creating a new light-duty firefighter position
would be an undue burden.[10]  Because the City never moved for summary
judgment based on this affirmative defense, the issue is not properly before
us. See Tex. R. App. P. 33.1(a); see also
Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494 (Tex. 1991)
(holding that party must raise affirmative defenses in motion for summary
judgment).  Therefore, the City failed to
prove as a matter of law that it offered Davis a reasonable accommodation or
that the accommodation Davis proposed would create an undue burden.  Accordingly, we sustain Davis= third point.

CONSTRUCTIVE DISCHARGE CLAIM








In his third point, Davis
asserts that the City failed to prove as a matter of law that Davis was not
subject to an adverse employment action by constructively discharging him.  In discrimination cases brought under Chapter
21, a prima facie case of  discrimination
is made by showing that the plaintiff (1) has a disability, (2) is a qualified
individual for the job in question, and (3) an adverse employment decision was made
because of the disability.  Talk,
165 F.3d at 1024.  In determining whether
a plaintiff is a Aqualified
individual@ with a
disability, the court must first determine whether the plaintiff can perform
the essential functions of the job he holds. 
Chandler, 2 F.3d at 1393; see also Daugherty v. City of El
Paso, 56 F.3d 695, 696 (5th Cir. 1995), cert. denied, 516 U.S. 1172
(1996).

If the court concludes that
the plaintiff is not able to perform the essential functions of the job, the
court must then determine whether any reasonable accommodation by the employer
would enable the plaintiff to perform those functions.  Chandler, 2 F.3d at 1393‑94.  If no reasonable accommodation would enable
the plaintiff to perform the essential functions of his position, then he is
not a Aqualified individual@ with a disability.  Tyndall
v. Nat=l Educ.
Ctrs., Inc., 31 F.3d 209, 212‑14
(4th Cir.1994). 

As held above, the City has
failed to conclusively establish that Davis was not disabled within the meaning
of Chapter 21 and that Davis was not a qualified individual for the job in
question, in that he could perform the essential functions of the position,
with or without reasonable accommodations. 
Therefore, we will focus on the third element of the cause of action and
determine whether the City subjected Davis to an adverse employment action by
constructively discharging him.








Where, as here, an employee
resigns, he may satisfy the discharge requirement by proving constructive
discharge.  Faruki v. Parsons S.I.P.,
Inc., 123 F.3d 315, 319 (5th Cir. 1997). 
To establish a constructive discharge, Davis must establish that Aworking conditions were so intolerable that a reasonable employee
would feel compelled to resign.@  Id.  Many factors are relevant to the consideration
of whether the plaintiff was constructively discharged, including evidence of
badgering, harassment, or humiliation by the employer calculated to encourage
the employee's resignation.  Id.  An employee may also be constructively
discharged if the employer gives the employee an ultimatum to quit or be fired.  Jenkins v. State of La., Through Dep=t of Corrs., 874 F.2d 992, 996 (5th Cir.
1989) (stating that constructive discharge can be proven with evidence that
plaintiff‑employee was given ultimatum), cert. denied, 493 U.S.
1059 (1990); Faruki, 123 F.3d at 319; see also, Burks v. Okla.
Publ=g Co., 81 F.3d 975, 978 (10th Cir.) (recognizing that employee can prove
constructive discharge by showing that she faced choice between resigning or
being fired), cert. denied, 519 U.S. 931 (1996).








Here, Davis presented a
transcript of a tape-recorded meeting between himself, Fire Chief David
Anderson, and Carolyn Van Duzee, the City=s personnel director.  The
transcript reflects that Davis asked Van Duzee whether he was being
terminated.  In response to his question,
Van Duzee informed Davis that it would be in his best interest if he decided to
resign rather than be terminated because future employers may ask the City
whether Davis resigned or was terminated. 
Van Duzee never stated that Davis should resign and otherwise he would
be terminated; however, according to the transcript, she informed Davis that it
would be in his best interest to resign, rather than go through termination,
but that it was his option.  During her
deposition, Van Duzee states that she never informed Davis whether or not he
was being terminated because she would not be able to answer that question, but
the fire chief would be able to.  Van
Duzee also questioned the accuracy of the transcript during her
deposition.  In viewing the evidence
presented by Davis and indulging every reasonable inference in his favor, we
conclude that the City has failed to prove as a matter of law that Davis was
not subjected to an adverse employment action in constructively discharging
him.  See Valence Operating Co.,
164 S.W.3d at 661.  Accordingly, we
sustain Davis= third
point.

AGE DISCRIMINATION CLAIM








In his seventh point, Davis
asserts that the City failed to prove as a matter of law that Davis cannot
establish an age discrimination claim. 
In Texas, an employer may not discriminate against its employees because
of age.  See Tex. Lab. Code Ann. ' 21.051(1).  In discrimination
cases that have not been fully tried on the merits, we apply the McDonnell
Douglas burden-shifting scheme.  Wal‑Mart
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).  Under this framework, the plaintiff must
first demonstrate a prima facie case of discrimination, and if the plaintiff is
successful, the burden of production shifts to the defendant employer to show a
legitimate and nondiscriminatory basis for the adverse employment
decision.  See McDonnell Douglas,
411 U.S. at 802, 93 S. Ct. at 1824.  If
the defendant employer demonstrates a nondiscriminatory reason for its
employment action, the plaintiff must show that the defendant=s proffered reason is merely a pretext.  See id. at 804, 93 S. Ct. at 1825.

To establish a claim for age
discrimination under Title VII, a plaintiff must first establish a prima facie
case of discrimination by demonstrating that he:  (1) is a member of a protected class; (2) was
discharged; (3) was qualified for the position from which he was discharged;
and (4) was replaced by someone outside the protected class, replaced by
someone younger, or was otherwise discharged because of his age.  Machinchick v. PB Power, Inc., 398
F.3d 345, 350 (5th Cir. 2005). 








The summary judgment proof
shows that Davis was over forty at the time of the alleged age discrimination;
however, Davis cannot prove that he was qualified for the position from which
he was discharged.  The Fifth Circuit has
held that a plaintiff challenging his termination can ordinarily establish a
prima facie case of age discrimination by showing that he continued to possess
the necessary qualifications for his job at the time of the adverse
action.  Bienkowski v. American
Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988).  The court explained that in order to show
that he continues to possess the necessary qualifications for his job, he must
not have suffered a physical disability that renders him unfit for the position
for which he was hired.  Id. at
1506 n.3.  Here, Dr. Blue=s deposition testimony establishes that Davis would be unable to
consistently climb ladders or drive emergency vehicles.  Additionally, Davis asserts that he cannot
walk fast or run without falling down. Because the summary judgment proof
establishes that Davis is not qualified for the position, the City has
conclusively negated at least one element of Davis= prima facie case of age discrimination.  Accordingly, we overrule Davis= seventh point.

CONCLUSION

We reverse the trial court=s judgment as it relates to Davis= causes of action for failure to reasonably accommodate and
constructive discharge; we remand these causes of action to the trial
court.  We affirm the portion of the
trial court=s judgment
as it relates to Davis= cause of
action for age discrimination.[11]

 

 








DIXON W. HOLMAN

JUSTICE

 

PANEL M: 
HOLMAN, WALKER, and McCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED: 
March 9, 2006











[1]The
Commission on Human Rights was recently abolished and its powers and duties
were transferred to the newly‑created Civil Rights Division of the Texas Workforce
Commission.  See Act of May 30,
2003, 78th Leg., R.S., ch. 302, 2003 Tex. Gen. Laws 1279.  Accordingly, we will not refer to Chapter 21
of the Labor Code as the Commission on Human Rights Act.  See Little v. Tex. Dep=t of
Criminal Justice, 148 S.W.3d 374, 377-78 (Tex. 2004).

 





[2]The
trial court=s
order granting summary judgment included a ruling by the court overruling the
City=s
objection to Davis=
affidavit.  The City filed a notice of
appeal under Texas Rule of Appellate Procedure 25.1(c), appealing the trial
court=s
ruling.





[3]Compare Trostle
v. Trostle, 77 S.W.3d 908, 915 (Tex. App.CAmarillo
2002, no pet.) (citing Farroux and holding that an affidavit which
conflicts with deposition testimony may not be used to raise a fact issue with
respect to a motion for summary judgment without an explanation); Burkett v.
Welborn, 42 S.W.3d 282, 286 (Tex. App.CTexarkana 2001, no pet.)
(same); and Elson Thermoplastics v. Dynamic Sys., 49 S.W.3d 891, 901
(Tex. App.CAustin
2001, no pet.) (same), with Thompson v. City of Corsicana Housing Auth.,
57 S.W.3d 547, 557 (Tex. App.CWaco 2001, no pet.) (citing Randall,
expressly rejecting Farroux, and holding that if a party provides
inconsistent or conflicting summary judgment proof, that party has created a
fact issue for the trier of fact to resolve); Larson v. Family Violence
& Sexual Assault Prevention Ctr. of S. Tex., 64 S.W.3d 506, 513 (Tex.
App.CCorpus
Christi 2001, pet. denied) (citing Thompson and concluding that any
inconsistency or conflict between a party=s deposition and affidavit is
not a reason to exclude that evidence in a summary judgment proceeding); see
also Randy Wilson, The Sham Affidavit Doctrine in Texas, 66 Tex. B.
J. 962, 964-68 (2003) (discussing the split of authority in Texas regarding
sham affidavits).





[4]See 42
U.S.C.A. ''
12101‑213 (2005).





[5]This
element is sometimes stated as a requirement that the employee prove that he is
otherwise qualified to perform the essential functions of the position, with or
without reasonable accommodations.  See
Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997).  This is consistent with the Austin Court of
Appeals=
determination that in a cause of action alleging failure to accommodate, part
of the  plaintiff=s
burden is to demonstrate that he is Aotherwise qualified@ for
the position from which he was excluded. 
Austin State Hosp. v. Kitchen, 903 S.W.2d 83, 91 (Tex. App.CAustin
1995, no pet.).  He can show this in
either of two ways:  (1) by proving that
he can perform all essential job functions without modifications or
accommodations; or (2) that some reasonable accommodation by the employer would
enable him to perform the job.  Id.  We believe that the element stated above,
requiring the plaintiff to prove that with reasonable accommodations he could
perform the essential functions of the position, most succinctly and accurately
states the elements of the plaintiff=s prima facie case.





[6]Davis
stated in his deposition that Dr. Blue recommended that he not carry ladders,
but Dr. Blue did not place him under a lifting restriction.  Dr. Blue confirmed that Davis was not placed
on any lifting restriction. 





[7] 29
U.S.C.A. ' 701 et.
seq. (West 1999 & Supp. 2005).





[8] The
inability to walk long distances does not necessarily rise to the level of
substantial limitation.  See Porch v.
Dillard=s
Inc., No. 4:03-CV-170-Y, 2004 WL 1809813, at *5 (N.D. Tex. Aug. 12, 2004)
(finding that the plaintiff was not substantially limited where the evidence
showed only that she was unable to stand all day or walk for long periods of
time); Martin v. AIMCO Props., No. Civ.A.3:01CV2050‑M, 2002 WL
1575411, at *2 (N.D. Tex. July 16, 2002) (finding that the plaintiff was not
substantially limited in walking even though she walked with a slight limp and
became fatigued at distances).

On
the other hand, great difficulty in walking can rise to the level of a
substantial limitation.  See McGarthy
v. Ridge, No. Civ. A. 302CV1111P, 2004 WL 1542161, at *4 (N.D. Tex. July 7,
2004) (finding that the plaintiff was substantially limited in walking where
she had difficulty walking, even with assistive devices).  For example, a person who required the use of
a wheelchair was found to be substantially limited in walking.  Sapp v. MHI P=ship, 199
F. Supp. 2d 578, 583 (N.D. Tex. 2002). 
Similarly, caselaw indicates that a person who uses other assistive
devices, such as a cane, can be substantially limited in walking.  Cf. McGarthy, 2004 WL 1542161, at *4; Gonzales
v. Columbia Hosp. at Med. City Dallas Subsidiary, No. 3:01‑CV‑1287‑P,
2002 WL 31245379, at *3‑4 (N.D. Tex. 2002) (finding a material issue of
fact as to whether plaintiff was substantially limited in walking when, inter
alia, the plaintiff walked with a cane).

 





[9]See 10th
Cir. Ct. R. 36.3, (stating that unpublished opinions are not  binding precedent and citation to an
unpublished decision is disfavored, but an unpublished decision Amay
be cited if (1) it has persuasive value with respect to a material issue that
has not been addressed in a published opinion, and (2) it would assist the
court in its disposition@).





[10]In a
single sentence in its motion for summary judgment, the City states that the
accommodation that plaintiff requested Ais not permitted as a matter
of law and also would have created an undue hardship for the City.@  Each of the City=s
grounds for summary judgment were separately enumerated, however, and nowhere
did the City specify that one of the grounds for summary judgment would be that
it conclusively established the elements of the undue burden defense.  A party who wishes to place an issue before
the court on summary judgment is required to Aexpressly
set out@ the
issue by Awritten
motion, answer or other response.@  Tex.
R. Civ. P. 166a(c); Travis v. City of Mesquite, 830 S.W.2d 94,
101 (Tex. 1992).  The purpose of this
rule is to ensure that the non‑movant has adequate notice of the movant=s
claims in order to enable the non‑movant to prepare a response.  Travis, 830 S.W.2d at 101.  Therefore, we conclude that this single
sentence did not constitute enough notice to appraise Davis and the trial court
that the City moved for summary judgment on the affirmative defense of an undue
burden.  See id.





[11]Davis=
first point is a general point challenging the entire summary judgment.  We sustain this point as it relates to Davis=
causes of action for failure to reasonably accommodate and constructive
discharge.  We overrule this first point
as it relates to Davis=
cause of action for age discrimination.