**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-10245
Summary Calendar

CONNIE J. TALK,

Plaintiff-Appellant,

VERSUS

DELTA AIRLINES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

February 5, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges

PER CURIAM:

Connie J. Talk appeals a grant of summary judgment dismissing her Americans with Disabilities Act[1] and Texas Commission on Human Rights Act[2] claims against Delta Airlines, Inc. Talk charged that the airline discriminated against her and failed to reasonably accommodate her alleged disability. We affirm the district court's grant of summary judgment.

**I.**

A childhood vehicle-pedestrian accident severely injured Connie J. Talk's ("Talk") right leg. As a result, her right leg

---

[1] 42 U.S.C. § 12101 et seq.

[2] Tex. Lab. Code Ann. § 21.001 et seq.

is shorter than her left and her foot is in a permanently flexed, or "equine" position. She walks on the ball of that foot and must wear a built-up shoe. Despite this deformity, she walks with only a slight limp and has undergone no physical therapy or surgery in the last 20 years.

Talk began working for Delta Airlines, Inc. ("Delta") in Houston as an associate reservations sales agent in 1984. She transferred to Dallas-Fort Worth International Airport ("DFW") two years later; shortly afterwards, Delta promoted her to reservations sales agent. She voluntarily transferred to Wichita, Kansas, to work in Department 125 as a customer service agent and returned the following year to DFW in that capacity. For the past eight years, except for the time period that is the subject of this suit, Talk has remained in Department 125, where her job duties include working at the ticket counter, the gate, and the baggage service areas.

Delta instituted company-wide cost-saving initiatives and DFW flight reductions in the spring of 1995. The airline selected some Department 125 employees, including Talk, on an inverse seniority basis to transfer to its operations sector. It offered these affected employees a choice of cargo (Department 135) or ramp (Department 120) positions. Talk chose the cargo position and became a "permanent" employee of Department 135 effective May 1, 1995.

Delta requires Department 135 workers to wear steel-toed shoes to protect their feet from injury. Talk could not find a

manufacturer to provide a built-up shoe with a steel toe. When she reported this to Willis Uggen ("Uggen"), the Delta operations manager, he obtained a waiver for her to work without protective footwear. Before allowing her to begin work, Uggen requested a doctor's statement confirming that Talk could not wear steel-toed shoes. Talk provided Delta such a letter from her doctor, who also warned that an injury to her leg, including a severe bruise, could result in the loss of her leg. Uggen was concerned by this warning and contacted Delta headquarters. The airline then decided that Talk could not work in cargo.

Talk entered a voluntary job placement process, an established Delta procedure for employees who are permanently unable to perform their assigned duties. The goal of the process is to find a new, permanent placement commensurate with the employee's abilities and restrictions. Talk filled out the Accommodation Request Form, asking to be placed in a position that did not require wearing steel toed shoes and that would not subject her to injury. She requested a flight attendant position or a Department 125 slot.

While Delta sought a permanent position for Talk, it also opened temporary gate agent positions at DFW. Several of the former Department 125 employees, who had transferred to ramp operations, were loaned to their old department to help during the summer rush period. Delta anticipated that they would return to their permanent ramp positions at the end of the busy season. Because Talk had entered the placement process, she was not considered for these temporary positions. Some seven months after

3

Talk entered the placement process, Delta decided to reopen permanent Department 125 positions. It offered these positions to all the former employees who had been loaned temporarily to that department; Delta also offered Talk one of the Department 125 positions. She accepted the offer November 3, 1995 and remains in that position today.

From May 1, 1995 until the end of November, while its personnel specialist Alison Phillips ("Phillips") attempted to find permanent placement for her, Delta allowed Talk to use her 55 days of accrued sick leave at full pay. She received no benefits after that that time until she began anew her DFW customer service agent's job December 1, 1995. During the seven-month placement process, Delta ascertained that DFW had no permanent Department 125 openings and expected none in the foreseeable future. Phillips, however, presented Talk with several alternatives. The airline offered her a permanent Department 125 position at LaGuardia Airport and at JFK in New York; she rejected the positions because of the expense of moving[3] and the high cost of living in that area. She also expressed concern that the cold climate would hurt her leg. Phillips located a permanent customer service agent position in Department 125 in Atlanta, which Talk also refused because Delta did not agree to pay moving expenses. Phillips next offered Talk a transfer to any available "temporary part-time" or "ready reserve" customer service agent position in any Delta city as well

---

[3]Talk requested that Delta pay all moving expenses. The airline does not pay these expenses for any employee who voluntarily choose to work in a different geographical area.

4

as a permanent reservation sales agent job at DFW. The latter paid a starting salary only slightly less ($50 a month) than she had previously earned. Talk declined to interview for the permanent DFW opening but expressed interest in a temporary, part-time position at DFW. Phillips offered Talk such a position, but when Delta reopened permanent Department 125 jobs at DFW, Talk accepted and returned to her original job.

After completing the Equal Employment Opportunity Commission grievance process, Talk sued Delta. She alleged, inter alia, that the airline had failed to offer her a reasonable accommodation for her disability after it was determined that her childhood injury prevented her from working in the Delta cargo area to which she had been involuntarily transferred. Because she claimed a violation of the Americans with Disabilities Act of 1990 ("ADA") along with violations of the Texas Commission on Human Rights Act ("TCHRA"), Delta removed the action. The airline then moved for summary judgment.

The district court, for the purposes of the summary judgment motion, assumed that Talk was "disabled" under the ADA and TCHRA.[4] It granted summary judgment on the grounds that Talk's refusal to accept the reasonable accommodation Delta offered her rendered her

---

[4]One of the general purposes for which the TCHRA was enacted was to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 et seq.)". Tex. Lab. Code Ann. § 21.001 (3) (West 1996). Texas courts apply analogous federal precedents based on the Rehabilitation Act and the ADA when interpreting the TCHRA with regard to employment discrimination. Holt v. Lone Star Gas Co., 921 S.W. 2d 301, 304 (Tex. App. - Fort Worth 1996, rehearing overruled).

unqualified under the ADA.  The court also summarily dismissed the state law claim, finding that Delta had made a good-faith effort to find Talk a reasonable accommodation.  Talk then moved for reconsideration, which the district court denied.  She now appeals.

## II.

We review a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the district court.  <u>Hamilton v. Southwestern Bell Telephone Co.</u>, 136 F. 3d 1047, 1049 (5th Cir. 1998).  Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  We review fact questions in the light most favorable to the nonmovant and questions of law <u>de</u> <u>novo</u>.  <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F. 3d 723 (5th Cir. 1995).

## III.

To make out a <u>prima</u> <u>facie</u> case of discrimination under the ADA, Talk must show that (a) she has a disability; (b) she is a qualified individual for the job in question; and (c) an adverse employment decision was made because of her disability.  <u>See</u> 42 U.S.C. § 12112(a).  The threshold issue in a plaintiff's <u>prima</u> <u>facie</u> case is a showing that she suffers from a disability protected by the ADA or the TCHRA.  <u>Rogers v. International Marine Terminals, Inc.</u>, 87 F. 3d 755, 758 (5th Cir. 1996)(ADA); <u>McIntyre v. Kroger Co.</u>, 863 F. Supp. 355, 357 (N.D. Tex. 1994)(TCHRA).  The ADA confers a special meaning to the term "disability", with which the Texas statute is in accord:

> (A)  a physical or mental impairment that substantially limits one or more of the major life activities of such an

6

individual;

(B)   a record of such an impairment; or

(C)   being regarded as having such an impairment.[5]

Talk claims that her deformed leg is such a disability.   We examine that claim with the knowledge that the statute requires an impairment that substantially limits one or more of the major life activities.

The ADA defines neither "substantially limits" nor "major life activities," but the regulations promulgated by the EEOC under the ADA provide significant guidance.   Whether an impairment is substantially limiting[6] is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact.[7]   The EEOC regulations adopt the same definition of major life activities used in the Rehabilitation Act.[8]   "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

---

[5]42 U.S.C. § 12102(2); Tex. Lab. Code Ann. § 21.002(6).

[6]To substantially limit means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.
> 29 C.F.R. § 1630.2(j)(1)(i)(ii).

[7]29 C.F.R. § 1630.2(j).

[8]Dutcher, 53 F. 3d at 726.

7

learning, and working."[9]

To determine if Talk has presented facts that indicate her leg impairment is an ADA or TCHRA disability, we first examine whether her leg deformity is an impairment that substantially limits any major life function other than working.[10] Only if there is no evidence of impairment to the other major life functions is an impairment to working considered.[11]

The record reveals that Talk complains of an impairment to her ability to walk. We have found few cases defining what constitutes a substantial limitation on a person's ability to walk.[12] It is clear, however, that moderate difficulty experienced while walking does not rise to the level of a disability. Talk asserts that she "walk[s] with a limp and move[s] at a significantly slower pace than the average person." She also claims that extreme cold causes her difficulty in walking. We note, however, that Talk had earlier requested transfers to Boston and New York, cities with cold winter climates. Talk's special orthopedic shoe, she admits, allows her to "maintain[] full mobility." We find that, although Talk experiences some impairment to her ability to walk, it does not

_____

[9]29 C.F.R. § 1630.2(i) provides an illustrative listing of activities.

[10]Hamilton, 136 F. 3d at 1050.

[11]Id.

[12]See, Penny v. United Parcel Service, 128 F. 3d 408 (6th Cir. 1997; Kelly v. Drexel Univ., 94 F.3d 102 (3rd Cir. 1996); Stone v. Entergy Services, Inc.,1995 WL 368473 (E.D. La.); Penchishen v. Stroh Brewery Co., 932 F. Supp. 671 (E.D. Pa. 1996), aff'd, 116 F. 3d 469 (3rd Cir. 1997)(Table), cert. denied, ____ U.S. ____, 118 S.Ct. 178 (1997); Hamm v. Runyon, 51 F. 3d 721 (7th Cir. 1995).

rise to the level of a substantial impairment as required by the ADA and TCHRA.

We now examine the effect Talk's leg deformity had on the major life activity of working.  With regard to working,

> [S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.[13]

Talk  presents evidence that her disability prevents her from working in Delta's cargo area.  She can not wear steel-toed shoes; her doctor cautions that a severe bruise or a new break could result in the loss of her leg.  Although Delta at first waived protective footwear for Talk, it later determined that there should never be a waiver of this requirement. Thus, Talk was unable to work in Department 135.  Evidence of disqualification from a single position or a narrow range of jobs will not support a finding that an individual is substantially limited from the major life activity of working.  Sherrod v. American Airlines, Inc., 132 F. 3d 1112, 1120 (5th Cir. 1998).  When an impairment like Talk's affects only a  narrow range of jobs, we regard it either as not reaching a major life activity or as not substantially limiting one." Chandler v. City of Dallas, 2 F. 3d 1385, 1392 (5th Cir. 1993). We find here that Talk's disability does not substantially limit her ability to work.

---

[13]29 C.F.R. § 1630.2(j)(3)(i).

We find no record of such a limitation in summary judgment evidence. Additionally, we do not find that Delta regarded Talk as having such an impairment. The airline readily admitted that Talk could not work in Department 135, but it actively sought positions for her in other areas. Even today, Talk remains a Delta customer service agent. Consequently, she has not shown that she is substantially limited in a major life activity under ADA or TCHRA provisions.

Because we find that Talk fails to meet the threshold requirement of having an impairment that substantially limits a major life activity, we have no need to reach Talk's claim that Delta did not offer her reasonable accommodations. Accordingly, for the reasons above, we affirm the grant of summary judgment. AFFIRMED.