OPINION OF THE COURT
Per Curiam.
Final judgment entered May 20, 2003 affirmed, with $25 costs. Appeal from order dated August 8, 2002 dismissed, without costs, as subsumed in the appeal from the final judgment.
The trial evidence comports with the court’s conclusion that respondent Joseph’s hip dysplasia and related conditions do not qualify her as a “disabled person” within the meaning of the rent control succession provisions (see 9 NYCRR 2204.6 [d] [3] [iii]).[1] While respondent may experience some difficulty and pain in walking, absent was the requisite showing that her impairment “substantially limit[s]” a major life activity. Notable in this regard was the assessment offered by respondent’s treating osteopathic physician that respondent “function[s] reasonably well” and respondent’s own testimony acknowledging her ability to ambulate and exercise without a cane or other assistive device, to undertake a lengthy daily commute, and to work on a regular, full-time basis (see Sirota v New York City *45 Bd. of Educ., 283 AD2d 369, 370 [2001]; see also Talk v Delta Airlines, Inc., 165 F3d 1021, 1025 [5th Cir 1999]; Penny v United Parcel Serv., 128 F3d 408, 415 [6th Cir 1997]; Kelly v Drexel Univ., 94 F3d 102, 106-108 [3d Cir 1996]). Nor is a finding of disability warranted by the fact that respondent was issued a handicapped parking permit by a city agency more than a decade ago (see Fagan v United Intl. Ins. Co., 128 F Supp 2d 182, 186 n 2 [SD NY 2001]) or by the mere possibility that she may have to undergo hip replacement surgery in the future (see Roush v Weastec, Inc., 96 F3d 840, 844 [6th Cir 1996]).
Inasmuch as the substantial limitation component of the rent control disability definition is functionally identical to that found in the disability definition contained in the Americans With Disabilities Act (ADA) (see 42 USC § 12102 [2] [A]),[2] we may appropriately rely upon case law interpreting the ADA in addressing, and ultimately rejecting, respondent’s succession claim. While mindful that rent control laws are generally to be interpreted broadly to effectuate their remedial purpose (see Braschi v Stahl Assoc. Co., 74 NY2d 201, 208 [1989]), we find unavailing respondent’s argument that a less rigorous standard should be applied in construing the substantial limitation language of the rent control succession provision than that applied to the nearly identical substantial limitation language of the ADA. The fact that the drafters of the rent control regulations adopted a restrictive threshold in defining disability to include only physical or mental conditions which limit a person’s ability to perform one or more major life activities and eschewed the broader definitions of disability found elsewhere in earlier enacted state and local laws (see e.g. Executive Law § 292 [21]; Administrative Code of City of NY § 8-102 [16]) strongly supports an inference that the drafters intended the rent control disability definition to be narrower in scope than those contained in the New York discrimination statutes and ordinances cited above (compare State Div. of Human Rights v Xerox Corp., 65 NY2d 213, 218-219 [1985]).
Since the trial court properly measured respondent’s lone defense of succession under the two-year co-occupancy requirement applicable to nondisabled individuals, and it being undisputed that respondent did not meet that requirement, we *46 sustain the possessory judgment awarded to petitioner on its licensee holdover petition. This disposition renders moot the question whether respondent primarily resided in the subject West 86th Street apartment prior to the death of her mother, the record tenant, or instead primarily resided in an East 72nd Street cooperatively owned apartment in which her husband and teenaged children live.
Suarez, EJ., Gangel-Jacob and Schoenfeld, JJ., concur.

. That section defines a “disabled person” as one
“who has an impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and which are expected to be permanent and which substantially limit one or more of such person’s major life activities.”

. The cited ADA section defines “disability” as follows: “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.”