**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1464
_____

JOANIE ALSTON,
                              Appellant

v.

PARK PLEASANT, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-07237)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 10, 2016
_____

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO, *Circuit Judges*.

(Filed: February 15, 2017)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*.

Joanie Alston appeals the District Court's grant of summary judgment to Park

Pleasant, Inc., her former employer, in her suit for employment discrimination under the

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act.[1]

Alston also appeals the District Court's denial of her motion for spoliation sanctions. We will affirm.

**I**

As we write solely for the benefit of the parties, we set out only the facts necessary for the discussion that follows.[2] In August 2011, Alston was hired by Park Pleasant, Inc., to be the Director of Nursing at its eponymously-named adult care facility. Initially, Alston's supervisor was Nancy Kleinberg, with whom Alston had personal rapport and from whom Alston received positive work reviews. In February 2012, Kleinberg was promoted, and her role as Alston's supervisor was filled by Carmella Kane. Kane and Alston clashed almost immediately, and repeatedly, although the parties dispute the extent and underlying causes of the conflict. Alston discussed with both Kane and Kleinberg that she was unhappy with her role after Kleinberg's promotion.

On June 21, 2012, Alston, Kleinberg, Kane, and HR director Sonjii West had a meeting in which Kane explained to Alston that Alston's performance was not meeting expectations, and the group laid out an improvement plan for Alston. Five days after that

---

[1] "The PHRA is basically the same as the ADA in relevant respects," and courts "generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (internal citation and quotation marks omitted). Our analysis and disposition of Alston's ADA claim applies equally to her PHRA claim. *Id*.

[2] For the purpose of this appeal, the facts described are undisputed or viewed in the light most favorable to Alston.

meeting, Alston missed work to have a biopsy, an absence for which she gave advance notice. On July 12, she was diagnosed with early-stage DCIS, a type of breast cancer.

Alston's relationship with her supervisors at Park Pleasant continued to deteriorate. By late July, Kleinberg and Kane instituted weekly meetings at which Alston's duties and performance were discussed and memorialized. Park Pleasant terminated Alston in early August of 2012.

Park Pleasant faced financial difficulties and was sold in December 2012. As part of the sale, Park Pleasant turned over physical email servers and other infrastructure, but retained documents it thought might be relevant to a future lawsuit by Alston. Park Pleasant, however, did not preemptively preserve everything that Alston's counsel ultimately requested in discovery once litigation commenced in November 2014, nearly two years after the sale.

In her initial complaint against Park Pleasant, Alston alleged discrimination on the bases of age, race, color, and disability. During discovery, Park Pleasant determined that some potentially responsive material *might* be accessible in old storage devices, and communicated to Alston the high expense and uncertain prospects for success of retrieving that material. Alston's counsel neither responded to multiple emails on that topic, nor filed a motion to compel, before filing a motion for sanctions against Park Pleasant for spoliation of evidence.

The District Court granted Park Pleasant summary judgment on all of Alston's claims, and denied Alston's motion for sanctions against Park Pleasant. Alston has appealed only the District Court's grant of summary judgment as to her claim of

discrimination on the basis of disability, and the District Court's denial of her motion for sanctions. We will address each in turn.

## II[3]

In assessing a claim of employment discrimination under the ADA, courts employ the *McDonnell Douglas* burden-shifting framework. *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999). To overcome a motion for summary judgment, a plaintiff alleging employment discrimination under the ADA must make a prima facie case with three elements. A plaintiff must demonstrate "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Under the burden-shifting framework, if a plaintiff makes out the prima facie case, the burden shifts to the employer to show that the adverse employment decision happened for legitimate, non-discriminatory reasons. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer demonstrates legitimate reasons for the adverse action, the burden shifts back to the plaintiff to show that the employer's stated reason was

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a grant of summary judgment is plenary. *NAACP v. City of Phila.*, 834 F.3d 435, 440 (3d Cir. 2016). We apply the same summary judgment standard as the District Court. *See Chavarriaga v. N.J. Dep't of Corrections*, 806 F.3d 210, 218 (3d Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

pretextual. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015).

The District Court granted summary judgment to Park Pleasant, finding that Alston failed to prove that she had a disability.[4] The parties do not dispute that Alston was diagnosed with DCIS, a form of breast cancer. At issue is whether Alston produced enough evidence to create a genuine issue of material fact as to whether her DCIS qualified as a disability under the ADA.

Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[5] "For purposes of [defining disability under § 12102(1)], a major life activity . . . includes the operation of a major bodily function, including but not limited to, functions of the immune system [and] normal cell growth . . . ." 42 U.S.C. § 12102(2)(B).

Those definitions incorporate amendments to the ADA enacted in 2009 as part of the ADA Amendments Act ("ADAAA"). The ADAAA broadened the scope of ADA

---

[4] The District Court also found that Alston failed to make out another element of the prima facie case, causation—that she had failed to prove that she had been fired as a result of discrimination. The District Court further explained that even if Alston had made out her prima facie case, she had failed to adduce any evidence that her firing was pretextual. Because we agree that Alston did not demonstrate that she had a qualifying disability, we will not address causation or pretext.

[5] Alston based her claim on section (A) only—she did not base her claim upon a record of having been disabled, and made no allegations that she had been regarded as disabled by Park Pleasant.

5

coverage by expanding the definition of disability to include a range of symptoms—such as reduced immune functioning or abnormal cell growth—characteristic of cancer and other diseases. Regulations implementing the ADAAA reflect that intention, as well. 29 C.F.R. § 1630.2(j)(3)(iii) ("[A]pplying the principles set forth in [] this section, it should easily be concluded that . . . cancer substantially limits normal cell growth."). In subsequent decisions addressing cancer as a qualifying disability, courts have interpreted the updated statute and regulations in accord with the intent behind the ADAAA. *Compare EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 653-54 (5th Cir. 1999) (declining to hold cancer to be an ADA-qualifying disability prior to ADAAA), *with Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016) (agreeing, after the ADAAA, that cancer is an impairment qualifying as a disability because "the functioning of one's immune system is a major life activity").

We agree that cancer can—and generally will—be a qualifying disability under the ADA. Nevertheless, "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv). Although the ADAAA makes the individualized assessment "particularly simple and straightforward" for diseases like cancer, 29 C.F.R. § 1630.2(j)(3)(ii), an individualized assessment must still take place. To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (holding that although vision-impaired individuals may not have "an onerous burden" in demonstrating disability and

6

"ordinarily will meet the [ADA]'s definition of disability," they must still offer evidence of "limitation in terms of their own experience"); *see also Colwell v. Rite Aid Corp.*, 602 F.3d 495, 501-502 (3d Cir. 2010) (same).[6]

Here, Alston has never claimed at any stage of this litigation that her DCIS limited any substantial life activity, including immune system function or normal cell growth. In her initial complaint, Alston's sole reference to her disability was to note that "[t]he termination decision occurred within weeks after Alston had been diagnosed with breast cancer and had taken leave to undergo a diagnostic medical procedure," and that "[a]fter Park Pleasant became aware of Alston's serious health issues, the criticisms of her ratcheted up." There was no reference anywhere in the complaint to limitations of any kind.

At her deposition, Alston averred that she was not substantially limited in any major life activity, including her work, her ability to drive, or her ability to take care of herself or her household. At oral argument before the District Court, her counsel stated that Alston "has not claimed that she had any limitations in her activities." App. 15. Even in her "motion to amend findings of fact and judgment or, in the alternative, motion for reconsideration," Alston did not reference abnormal cell growth, reduced immune function, or any other substantial limits on a major life activity to make out the qualifying

---

[6] Since the ADAAA was enacted, courts have imposed this same requirement on plaintiffs alleging disability discrimination on the basis of diseases that compromise the immune system. *E.g. Jeffries v. Wal-Mart Stores E.*, No. GJH-15-473, 2016 WL 3771241, at *3 (D. Md. July 11, 2016), *aff'd sub nom. Jeffries v. Wal-Mart Stores E., L.P.*, No. 16-1900, 2016 WL 6068865 (4th Cir. Oct. 17, 2016) (finding breast cancer was a qualifying disability because plaintiff cited extreme fragility of her immune system affecting her ability to work).

7

disability element of a prima facie case.  Instead, she simply stated that "an individual who has been diagnosed with cancer which is in remission qualifies as an individual with a disability."  App. II. 519-20.  Because she has not offered evidence as to any limits on any major life activity, Alston has failed to make out an element of her prima facie case, and so her discrimination claim fails.

## III[7]

In addressing Alston's appeal of the District Court's denial of her motion for sanctions, we apply a four-factor test to determine whether actions constitute spoliation. "Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and [4] the duty to preserve the evidence was reasonably foreseeable to the party."  *Bull*, 665 F.3d at 73 (citing *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)).  With respect to the third element, actual suppression, "a finding of bad faith is pivotal to a spoliation determination."  *Id.* at 79.

Here, even assuming that the evidence requested by Alston existed and would have been relevant to Alston's claims, Park Pleasant's conduct during discovery precludes spoliation sanctions because it did not amount to bad faith.  Park Pleasant described the situation, offered possible accommodations, and received no reply.  By

---

[7] Our standard of review of a denial of motion to sanction for spoliation of evidence is abuse of discretion. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal citation omitted).

contrast, "[w]ithholding requires intent." *Id*. Because there was no actual suppression, Alston's spoliation claim fails.

## IV

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to Park Pleasant, and its denial of Alston's motion for sanctions.