5539-181 & 182 Prospect Park W. Brooklyn LLC v Rivera (2025 NY Slip Op 25198)

[*1]

5539-181 & 182 Prospect Park W. Brooklyn LLC v Rivera

2025 NY Slip Op 25198

Decided on August 29, 2025

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 29, 2025
Civil Court of the City of New York, Kings County

5539-181 and 182 Prospect Park West Brooklyn LLC, Petitioner

against
Christopher Rivera; CHRISTIAN RIVERA; ALEXANDER RIVERA; ANGELO RIVERA; CYNTHIA RIVERA; CYNTHIA VARGAS; JOHN DOE; JANE DOE, Respondent.

L&T Index No. 301046-22

Rose & Rose (Jainey Elizabeth Samuel, Esq.), for petitioner
Legal Aid Society (Madison Rae Hays, Esq.), for respondent Christopher Rivera

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos: 89-111.
BACKGROUND AND PROCEDURAL POSTURE
This is a summary holdover proceeding commenced in January 2022, whereby petitioner seeks possession of the rent-controlled subject premises following the death of the rent-controlled tenant, Edna Rivera, on or about August 2021. Petitioner alleges that the respondents are licensees and do not have succession rights to the subject premises. (NYSCEF Doc No. 1, petition ¶¶ 4-8, 11; id. at 8-9, notice of termination of license and/or notice to quit.) Respondent initially defaulted and a default judgment of possession was entered. Subsequently, respondent retained counsel.[FN1]

At the pre-trial conference, the parties disputed the relevant period of cohabitation which respondent must prove in order to prevail on his succession claim, i.e., either two (2) years prior to his mother's death, or one (1) year if respondent meets the definition of a "disabled person." The Rent and Eviction Regulations define a "disabled person" as "a person who has an [*2]impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and which are expected to be permanent and which substantially limit one or more of such person's major life activities." (9 NYCRR § 2204.6 [d] [3] [iii].)
Respondent filed a motion seeking partial summary judgment pursuant to CPLR 3212 (g), arguing that he qualifies as a "disabled person" as defined by 9 NYCRR § 2204.6 (d) (3) (iii), and is therefore entitled to benefit from the truncated, one-year co-residency timeframe. (NYSCEF Doc No. 89, notice of motion [sequence 5].)[FN2]
 Both parties cite to, inter alia, and most contentiously, Belnord Realty Assoc., L.P. v Joseph, 10 Misc 3d 43 (App Term, 1st Dept 2005), but disagree on the continued validity and precedential value of Belnord. Both parties also cite to the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act Amendments of 2008 (the "ADAAA"). The focus of the parties' disagreement is whether this court should look to the ADA, as the Belnord court did, or to the ADAAA, which was passed and enacted after Belnord was issued, for guidance regarding the interpretation of 9 NYCRR § 2204.6 (d) (3) (iii).
Respondent argues that the ADAAA, with its prescription to liberally construe the term "substantially limits," and a expanded statutory definition of "major life activities," should inform this court's determination at trial. In opposition, petitioner argues that the ADAAA and implementing regulations so broadened the construction of the words "substantially limits" and the definition of "major life activities" that the term "disabled person" has been effectively redefined. Given that the Belnord court looked for guidance to pre-ADAAA case law which narrowly interpreted the "substantial limitation" prong, and rejected the Belnord respondent's argument that the less rigorous standard found in the Human Rights Laws should govern the court's analysis of their disability, petitioner maintains that the court must look to the Belnord court's pre-ADAAA interpretation of "disability" to determine if respondent meets the definition of a "disabled person" under 9 NYCRR § 2204.6 (d) (3) (iii). Petitioner's position is that the ADA as amended in 2008 does not represent what the Appellate Term, First Department determined to be the standard by which a qualified disability must be measured.[FN3]

After consideration of the parties' arguments, the court finds that whether one or more of [*3]respondent's disabilities substantially limits him from performing one or more major life activities is a matter of fact for trial. As a matter of law, however, the court will apply a more stringent standard than that found in the New York City and State Human Rights Laws; and the court may appropriately look to the ADAAA for guidance, as well as to any available legislative history and the purposes of the Rent Control Law and of the Rent and Eviction Regulations. If it is determined at trial that, due to one of his disabilities, respondent is substantially limited in one or more major life activities, then respondent should benefit from the one-year co-residency period, and that period shall run from one year prior to the tenant of record's death. [FN4]

DISCUSSION
The Rent Control Succession Regulations - 9 NYCRR § 2204.6 (d) (1)
The family member of a rent-controlled tenant cannot be evicted when the tenant permanently vacates an apartment, if the family member can prove they resided with the tenant as a primary residence for no less than two years, or when the family member "is a 'senior citizen' or a 'disabled person,' as defined in paragraph (3) of this subdivision, for a period of no less than one year, immediately prior to the" tenant's permanent vacatur. (9 NYCRR § 2204.6 [d] [1].) As set forth above, a "disabled person" is defined by the Rent and Eviction Regulations as "a person who has an impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and which are expected to be permanent and which substantially limit one or more of such person's major life activities (emphasis added)." (Id. § 2204.6 [d] [3] [iii]; see also 9 NYCRR § 2523.5 [b] [5] [same].) Under the regulation, a respondent is no longer required to demonstrate that their impairment limits their ability to be gainfully employed in order to qualify as a disabled individual. As recounted in Aspenly Co., LLC v Prastien, 2001 WL 36413151 (Civ Ct, NY County, Mar. 27, 2001, Hagler, J.), cited by the trial court in Belnord:
"Until 1990, there was [a] single definition of a 'disabled person' defined under 9 NYCRR § 2520.6(q) which primarily dealt with owner occupancy proceedings (9 NYCRR § 2524.4(a)(1) & (2)) and succession rights (9 NYCRR § 2523.5(b) (1)). The definition focused on an impairment which was expected to be permanent and prevented a person '... from engaging in any substantial employment.' . . . [T]he definition of a 'disabled person' was amended solely for succession rights cases in 1990. . . . The newer definition is much broader than the older one because an individual can be gainfully employed and, yet, come within the ambit of the definition of a 'disabled person[.]'" (Aspenly Co., LLC, 2001 WL 36413151, *5-6.)
The Aspenly court observed in 2001 that there was "limited legislative intent related to this definition except for the general proposition that the remedial nature of rent regulation is to protect a vulnerable population such as people with disabilities from eviction[,]" citing an annual message from the Governor pertaining to the 1990 Sessions Laws which this court was not able to locate. (Id. at *7.) Because the definition of disability in the Rent and Eviction Regulations "strongly resembles a portion of the "definition of 'disability' under the Americans with Disability Act of 1990" the Aspenly court looked to decisions construing similarly worded decisions. (Id.) Given this continued dearth of decisional authority in New York State in 2005, the trial court in Belnord followed the Aspenly court's example.
Belnord Realty Assoc., L.P. v Joseph and The Americans with Disabilities Act of 1990
In Belnord, the landlord commenced a licensee holdover proceeding against the remaining occupant after the death of the tenant of record. The alleged licensee's sole defense was that they were entitled to succeed to the former tenant of record's rent-controlled status as a qualified disabled individual, due to their "hip dysplasia" which caused "some difficulty and pain in walking." (Id. at 44.) In affirming the trial court which applied to two-year cohabitation requirement, the Appellate Term, First Department "appropriately rel[ied] upon case law interpreting the ADA (emphasis added)[.]" (Id. at 45 [internal citation and footnote omitted].)
The Belnord court looked to four employment discrimination cases for guidance: Sirota v New York City Bd. of Educ., 283 AD2d 369, 370 (1st Dept 2001); Talk v Delta Airlines, Inc., 165 F3d 1021, 1025 (5th Cir 1999); Penny v United Parcel Serv., 128 F3d 408, 415 (6th Cir 1997); and Kelly v Drexel Univ., 94 F3d 102, 106-108 (3d Cir 1996). (Belnord, 10 Misc 3d at 44-45.) In Sirota, the court granted summary judgment to defendant, finding that "plaintiff's cancer and attendant surgeries do not constitute a disability" under the ADA, "since they did not substantially limit her in a major life activity, as evidenced by her own physician's letters affirming her ability to work on a regular, full-time basis." (Sirota, 283 AD2d at 370 [internal citation omitted].) Talk, Penny, and Kelly each rely on regulatory definitions of the terms "substantially limited" and "major life activities," promulgated by the Equal Employment Opportunity Commission ("EEOC") pursuant to the ADA, as related to a claimant's ability to work. (Talk, 165 F3d at 1025; Penny, 128 F3d at 414; Kelly, 94 F3d at 106-107; former 29 CFR 1630.2 [i] [defining "major life activities" to include, inter alia, walking.])[FN5]

Although recognizing that the "rent control laws are generally to be interpreted broadly to effectuate their remedial purpose (see Braschi v Stahl Assoc. Co., 74 NY2d 201, 208 [1989])," the Belnord court rejected the respondent's "argument that a less rigorous standard [found in the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL")] should be applied in construing the substantial limitation language of the rent control succession provision than that applied to the functionally identical substantial limitation language of the ADA." (Belnord, 10 Misc 3d at 45.)[FN6]
Given that "the drafters of the rent control regulations . . . eschewed the broader definitions of disability found elsewhere in" the "earlier enacted" NYCHRL and NYSHRL, the court found "strong support[] [for] an inference that the drafters intended the rent control disability definition to be narrower in scope than those contained in" the NYCHRL and NYSHRL. (Id.)
As for the proof adduced at trial, the Belnord court found "[t]he trial evidence comports with the [trial] court's conclusion" that the respondent therein failed to show "her impairment 'substantially limit[s]' a major life activity," noting a treating physician's assessment that the respondent "function[s] reasonably well" and the respondent's trial testimony "acknowledging her ability to ambulate and exercise without a cane or other assistive device, to undertake a lengthy commute, and to work on a regular, full-time basis." (Id. at 44-45 [internal citations and quotation marks omitted].)
ADAAA, "Substantial Limitation," and "Major Life Activities"
Just three years after Belnord was issued, Congress passed the ADAAA, "An Act [t]o restore the intent and protections of the Americans with Disabilities Act of 1990." This legislative initiative was largely in response to EEOC regulations and the Supreme Court's holdings in Sutton v United Air Lines, Inc., 527 US 471 (1999), and Toyota Motor Mfg. Kentucky, Inc. v Williams, 534 US 184 (2002). Congress's explicit findings in passing the ADAAA include that the regulatory definition of "substantially limits" as "significantly restricted" was "inconsistent with congressional intent, by expressing too high a standard"; that the holding in Sutton "and its companion cases [] narrowed the broad scope of protection [*4]intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect"; and that Toyota Motor Mfg. Kentucky, Inc. "further narrowed the broad scope of protection intended to be afforded by the ADA[,]" demanded "a greater degree of limitation than was intended by Congress[,]" and "created an inappropriately high level of limitation necessary to obtain coverage under the ADA[.]" (Pub L 110-325, 122 US Stat 3553 [110th Cong, Sept. 25, 2008] [ADAAA], amdg 42 USCA § 12101 et seq.) By passage of the ADAAA, Congress "reject[ed] the standard[] enunciated [] in Toyota . . . that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives,'" and conveyed its intent "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]" (Id.)
The definition of a "disabled person" found in 9 NYCRR § 2204.6 (d) (3) (iii) has not been amended since Belnord was decided, and the definition of a disability found in the ADA remains the same, even as the Act has been amended.[FN7]
 Thus, just as in 2005 when Belnord was published, the definitions themselves remain "functionally identical." (Belnord, 10 Misc 3d at 45.) However, when Belnord was decided, the ADA did not provide interpretive guidance for the words "substantially limits" as used in the ADA's definition of "disability," nor did it provide a definition of "major life activities." The ADAAA has since clarified the intended construction of the words "substantially limits" and the definition of "major life activities." (See Rohr v Salt River Project Agric. Improvement & Power Dist., 555 F3d 850, 861-862 [9th Cir 2009] ["[T]he ADAAA sheds light on Congress' original intent when it enacted the ADA," and "the original congressional intent [is] expressed in the amendment[.]")
In addition to providing rules of construction for courts tasked with interpreting the words "substantial limitation" in the definition of "disability," the drafters included implicit instruction that courts undertake an interpretive construction, to wit, that the terms "be interpreted consistently with findings and purposes of the [ADAAA]." (42 USCA § 12102 [4] [B].) The ADAAA includes such findings and purposes. (See id. § 12101.) The drafters of the ADAAA found that it is well "documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally," and that "discrimination against individuals with disabilities [*5]persists in such critical areas as . . . housing[]." (Id. § 12101 [a] [3], [6].) The purpose of the ADAAA is to, inter alia, "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" (Id. § 12101 [b].)
While Belnord has been cited favorably by a handful of appellate court decisions for the proposition that determination of a disability under the Rent and Eviction succession regulations is a factual inquiry for trial, those decisions do not reference the ADA or the ADAAA, nor do they purport to interpret the definition of a disability.[FN8]
Indeed, Belnord remains the only New York appellate court case this court could locate that construes the definition of disability found in the Rent and Eviction succession regulations, or the identical provision in the Rent Stabilization Code. (See 9 NYCRR § 2523.5 [b] [5].) Cognizant of this lack of precedent, petitioner urges that the Belnord court's ADA-based interpretation of a qualifying disability is inviolate, and the only true barometer of the legislature's intended application.
Petitioner states that "[t]he 2005 Belnord appellate court decision referred to the version of the Americans with Disabilities Act (ADA) in effect at that time because of the similarities in the statutory definitions." (NYSCEF Doc No. 103, petitioner's mem of law at 15.) However, petitioner advances that because the ADAAA "expanded the scope of activities encompassed by the phrase 'major life activity'" and "broaden[ed] the definition of the phrase 'substantially limits' in connection with a major life activity so that more impairments would be considered 'disabilities' under the statute[,]'" to apply the ADAAA to respondent's claim would be contrary to Belnord's precedent. (Id. at 16-17.) However, Belnord does not enjoy the kind of precedential value ascribed to it by petitioner. The Appellate Term simply recognized the trial court's proper use of an interpretive theory, namely that in the absence of specifically worded legislative intent and legal precedent in New York, a court may look to other similarly worded statutes and courts' interpretation of those statutes. The Appellate Term held that the definition of a disability under the Rent and Eviction Regulation was intended to be narrower than the definition in the Human Rights Law.
Petitioner agrees that the ADAAA "[does] not significantly change the definition of [*6]disability, [but argues that the ADAAA] intentionally and specifically broaden[s] the elements contained in that definition in a number of critical ways. The 2008 Amendments intended to cover more people as 'disabled' under the ADA." (Id. at 15.) Presumably, petitioner is concerned that respondent may benefit from qualified disability status under the ADAAA, whereas he would not under the ADA. The constructions and definitions which petitioner seeks to avoid — and respondent seeks to apply — are as follows:
• The definition of "substantially limits" should "be interpreted consistently with the findings and purposes of the [ADAAA]," 42 USCA § 12102 (4) (B), and the impairment in question "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." (Mazzeo v Color Resolutions Intern., LLC, 746 F3d 1264, 1269 [11th Cir 2014].)
• Major life activities are now defined to specifically include, as relevant here, eating, sleeping, breathing, learning, concentrating, thinking, communicating, working, as well as normal cell growth. (42 USCA § 12102 [2] [A]-[B].)
• An impairment that is episodic or in remission — such as cancer — is a disability if it would substantially limit a "major life activity" when active, 42 USCA § 12102 (4) (D), such as normal cell growth. (Oehmke v Medtronic, Inc., 844 F3d 748, 756 [8th Cir 2016].)[FN9],[FN10]
• "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as medication[.]" (42 USCA § 12102 [4] [E] [i] [I]; Rohr v Salt River Project Agric. Imp. & Power Dist., 555 F3d at 861-862 [Under the ADAAA, "[i]mpairments are to be evaluated in their unmitigated state, so that, for example, diabetes will be assessed in terms of its limitations on major life activities when the diabetic does not take insulin injections or medicine[.]"])
These expanded constructions — "the original congressional intent as expressed in the [*7]amendment," Rohr, 555 F3d at 861-862 — are not, however, as permissive as petitioner may fear. Notwithstanding the instruction that courts interpret substantial limitation and major life activity liberally, courts adhere to stringent pleading requirements when an individual is claiming disability-related discrimination. (See Bresaz v Cnty. of Santa Clara, 136 F Supp 3d 1125, 1136 [ND CA 2015] [noting that "even cases decided after the ADAAA's enactment appear to retain a similar specificity requirement [as that prior to passage of the ADAAA]"]; see also Donaldson v Trae-Fuels, LLC, 399 F Supp 3d 555, 559 [WD VA 2019] [denying defendant's motion to dismiss, where plaintiff "specifically allege[d] that" his pancreatic cancer "substantially limited . . . his normal cell growth and his digestive functions . . . ."] [internal quotation marks omitted]; Jeffries v Wal-Mart Stores E., 2016 WL 3771241, *3, 2016 US Dist LEXIS 95051, *8 [D MD, Jul. 11, 2016, No. GJH-15-473] [finding plaintiff's breast cancer qualified as a disability under the ADA, where "[p]laintiff alleged that her immune system became extremely fragile which required her to stay off from work."] [internal quotation marks omitted].)[FN11]

In Alston v Park Pleasant, Inc., 679 Fed Appx 169 (3rd Cir 2017), the court agreed "that cancer can—and generally will—be a qualifying disability under the ADA," as long as it is found that a major life activity, "including immune system function or normal cell growth," has been substantially limited. (Alston, 679 Fed Appx at 172.) However, the Alston court affirmed the District Court's award of summary judgment to defendant, where plaintiff "never claimed at any stage of [] litigation that her DCIS [ductal carcinoma in situ] limited any substantial life activity, including immune system function or normal cell growth." (Id.)[FN12]

At trial, a plaintiff must prove their claim. "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." (28 CFR 35.108 [d] [1] [vi]; 29 CFR 1630.2 [j] [1] [iv] [same]; Alston, 679 Fed Appx at 172 ["Although the ADAAA makes the individualized assessment 'particularly simple and straightforward' for diseases like cancer, 29 C.F.R. § 1630.2(j)(3)(ii), an individualized assessment must still take place."]; Hoffer v Inch, 382 F Supp 3d 1288, 1297, 1298 n 6 [ND FL 2019], revd on other grounds 973 F3d 1263 [11th Cir 2020] [decertifying class as to an ADA claim, because "an ADA claim requires an individualized inquiry," and stating "[i]t is no answer to harp on the fact that the assessment 'should be particularly simple and straightforward.' No matter how easy or straightforward the 'individualized assessment' is, it is still plainly 'necessary.'"] [internal citation omitted].)
Discerning a Qualifying Disability Under the Succession Provisions of the Rent and Eviction Regulations
While the parties vigorously debate whether the ADA or ADAAA should guide this court's interpretation of the definition of "disabled person" under the Rent and Eviction Regulations, the court is not persuaded by petitioner's argument that the court must apply the ADA and the cases interpreting it from the time Belnord was decided. Nor, on the other hand, is the court persuaded by respondent's argument that it must apply the ADAAA and the recent interpretation of same by federal courts in employment discrimination cases. Belnord does not stand for the proposition that we must look to either the ADA or the ADAAA for guidance. Rather, Belnord stands squarely for the proposition that the definition of disability in the Rent and Eviction Regulations was intended by the drafters to be less broad than the NYCHRL and the NYSHRL.[FN13]
Given the paucity of New York caselaw on this specific issue, the Belnord court looked outside of the limited universe of rent regulated succession cases to gather evidence for the succession regulation's meaning. Considering the testimony and facts presented by the Belnord respondent, the Appellate Term upheld the trial court's reliance on Aspenly and the Aspenly court's method of statutory construction. The Belnord court's examination of federal employment discrimination caselaw is simply part of a reasoned decision by a court striving to reach the correct result; and under the facts and circumstances therein, the Appellate Term affirmed the trial court's ultimate determination.
Put another way, the Belnord court determined that, had the drafters of the Rent and Eviction Regulations intended as broad a definition of disability as that found in the NYCHRL and NYSHRL, the drafters would have endorsed a functionally identical regulation. Instead, the drafters intended something narrower, and "eschewed the broader definitions of disability found elsewhere in earlier enacted State and local laws," a definition that respondent therein argued should guide the court. (Belnord, 10 Misc 3d at 45.) Specifically, unlike either the ADA or the ADAAA, under the Human Rights Laws, to qualify as a disability, it need not be demonstrated that the impairment substantially limits a major life activity.[FN14]
Thus, the ADAAA remains significantly less permissive than the Human Rights Laws. Were this court to apply the ADAAA to respondent's claim of succession, it would not run afoul of the Belnord court's reasoning.[FN15]

The rule that emerges from the foregoing precedent and analysis is that whether a person is substantially limited in the performance of one or more major life activities will generally, as here, be an issue for trial. (Jemrock Realty Co., LLC, 2024 NY Slip Op 50148[U], *1; 1970 Univ. LLC v Estate of Garcia, 56 Misc 3d 95; Belnord, 10 Misc 3d 43.) The trial court must make an individualized assessment of respondent's claim, and may look for guidance to the purposive parameters provided by the ADAAA, which clarified that the definition of a covered disability should be interpreted in the context of the public policy in favor of protecting vulnerable individuals, a remedial purpose that is functionally identical to that of the Rent and Eviction Regulations.
CONCLUSION
Accordingly, it is
ORDERED that respondent's motion for summary judgment is DENIED in part, as issues of fact remain for trial regarding respondent's status as a qualified disabled individual under the Rent Control succession regulations; and it is further
ORDERED that as a matter of law, the court may use common tools of statutory interpretation to determine if respondent is a qualified disabled person under the Rent and Eviction Regulations, including but not limited to consideration of the broader statutory context of the particular provision.
Dated: August 29, 2025
Brooklyn, NY
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:Respondent was incarcerated during the pendency of this proceeding and continues to be to this day. As a result, respondent's initial counsel, Brooklyn Legal Services, was prohibited by federal regulations from continued representation. On March 20, 2025, LAS filed a notice of appearance for respondent. NYSCEF Doc No. 86.

Footnote 2:Respondent claims his disabilities include Non-Hodgkin Lymphoma, for which he is currently in remission; Bipolar 1 Disorder; schizophrenia; and attention deficit hyperactivity disorder, depression, and anxiety. NYSCEF Doc No. 91, Rivera affirmation ¶ 3.

Footnote 3:In reply, respondent advances what petitioner characterizes as a new argument: "That the Legislature intended [9 NYCRR § 2204.6 (d)] (3) (iii)] to protect our most vulnerable tenants and prevent discrimination against senior citizens and disabled individuals within the realm of regulated housing." (NYSCEF Doc No. 111, respondent's attorney's reply affirmation at 9.) Petitioner made an oral application to file a sur-reply to address this argument, but ultimately withdrew its request on the record at a conference held one week before oral argument on respondent's motion. Petitioner is correct that the Rent Control Law is not an anti-discrimination statute. For housing related discrimination issues, as the Appellate Term has recognized, New York provides more broadly inclusive laws.

Footnote 4:Respondent also argues that the law is clear that respondent did not have to qualify as a disabled person at the time of his mother's death; rather, respondent advanced, to benefit from the one-year co-residency requirement, a "family member's disability status at the time the Court determines the right of succession, is controlling." NYSCEF Doc No. 90, respondent's memorandum of law at 10-11. The court rejects respondent's argument, which is supported only by two Housing Court decisions that respondent characterizes as "controlling." Id. Respondent neglects to distinguish subsequent analogous appellate case law holding that a family member must demonstrate they reached 62 years of age at the time of the tenant's death or vacatur to be entitled to the one-year co-residency requirement. See Almonte v O'Neill, 86 Misc 3d 130(A), 2025 NY Slip Op 50976(U) (App Term, 1st Dept 2025) (finding respondent seeking succession rights not entitled to one-year co-residency requirement for senior citizens, as "it is undisputed that respondent was not a senior citizen at the time of tenant's death[.]"); 550 Equities LLC v Washington, 67 Misc 3d 127(A), 2020 NY Slip Op 50394(U) (App Term, 1st Dept 2020) (affirming lower court's denial of succession rights to respondent, where "respondent was only 61 years old at the time his mother vacated," and therefore "did not qualify as a 'senior citizen' who resided with the tenant of record as his primary residence for one year immediately prior to his mother's permanent vacatur.") (internal citation omitted). 

Footnote 5:The ADA directs the EEOC to issue regulations to carry out the provisions of subchapter I of the ADA that are particular to the realm of employment. 42 USCA § 12116. The ADA further grants the Attorney General the authority to issue regulations under certain provisions of subchapter II, 42 USCA § 12134 (a), and grants the Secretary of Transportation the authority to issue regulations pertaining to certain provisions of subchapters II and III, 42 USCA §§ 12149, 12186. 

Footnote 6:The NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." Administrative Code of the City of NY § 8-102. It appears this is the same definition in effect at the time Belnord was decided. See Marullo v Ellerbe Becket, Inc., 2001 WL 282772, n 5 (ED NY 2001) ("The NYCHRL defines a disability as a 'physical, medical, mental, psychological impairment or a history or record of such impairment.'") The NYSHRL defines "disability" — both now and at the time Belnord was decided — as "(a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment . . . ." NY Exec § 292(21). Neither the NYCHRL or the NYSHRL require that the disability substantially limit a major life activity, or that the disability be permanent.

Footnote 7:Compare former 42 USCA § 12102 (2) ("(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"), with 42 USCA § 12102 (1) ("(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph [3] [emphasis added]"), with 42 USCA § 12102 (3) provides that an individual will meet the definition of disability under 42 USCA § 12102 (1) (C) — "being regarded as having such an impairment" — if they can "establish[] that [they have] been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." However, it is not applicable to "transitory or minor" impairments, defined as impairments "with an actual or expected duration of 6 months or less."

Footnote 8:Recently, in Jemrock Realty Co., LLC v Sternberg, 81 Misc 3d 143(A), 2024 NY Slip Op 50148(U) (App Term, 1st Dept 2024), the landlord moved for summary judgment on respondent's succession claim. The trial court denied petitioner's motion, stating that "[t]here are questions of fact necessitating a trial, including the relevant co-occupancy period, as Rabbi Sternberg claims to be disabled under Section 2523.5(b)(1) of the Rent Stabilization Code[.]" (NYSCEF Doc No. 52, Mar. 31, 2023 decision and order, in Jemrock Realty Co., LLC v Sternberg, Civ Ct, NY County, index No. 079556-17.) The landlord appealed. The Appellate Term, First Department, affirmed the trial court, citing to Belnord for the proposition that "the requisite showing that [an] impairment 'substantially limit[s]' a major life activity is a matter for trial," affording, without construing the definition of disability, great deference to the trial court's credibility determinations. In 1970 Univ. LLC v Estate of Garcia, 56 Misc 3d 95 (App Term, 1st Dept 2017), the Appellate Term, First Department, citing to Belnord, declined to disturb the trial court's unrebutted credibility determinations based upon "respondent's testimony and that of her expert witness," as well as documentary evidence from the Social Security Administration, that respondent had suffered from asthma and personality disorders "since July 1995." 1970 Univ. LLC, 56 Misc 3d at 96.

Footnote 9:"Cancer is an impairment, 29 C.F.R. § 1630.2(h)(1), the functioning of one's immune system is a major life activity, 42 U.S.C. § 12102(2)(B), and Congress has instructed the courts to determine whether a limitation is substantial in light of its command to interpret disability broadly, 42 U.S.C. § 12102(4)(B); ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Further, 'an impairment that is ... in remission,' as is Oehmke's cancer, 'is a disability if it would substantially limit a major life activity when active.' 42 U.S.C. § 12102(4)(D). Therefore, Oehmke's cancer, even while in remission, is clearly a covered disability under the ADA." Oehmke, 844 F3d at 756.

Footnote 10:Here, to support a determination that he is a disabled person under the Rent and Eviction Regulations and the ADA as amended, in addition to being a cancer survivor, respondent alleges that before his cancer was in remission, he "experienced shortness of breath, exhaustion, pain in my back and abdomen, swelling in my abdomen and groin, hair loss, fevers, and nausea as a result of" the cancer, which prevented respondent from "eating; sleeping; be[ing] physically active; lift[ing] heavy objects; breathing normally; and working." He further alleges he still has "bad bone pain and swelling of my abdomen" despite being in remission. NYSCEF Doc No. 91, Rivera affirmation ¶¶ 10-12.

Footnote 11:But see Thomas v Holmes, 2024 WL 4135511, 2024 US Dist LEXIS 153839 (SD TX 2024, Mar. 15, 2024, No. 2:23-CV-00190) (liberally construing the pleadings and accepting plaintiff's allegations as true, finding plaintiff's ADA claims should be maintained, where plaintiff alleged diagnoses of major depression disorder with psychotic features, post-traumatic stress disorder, and schizophrenia rendered plaintiff unable "to sleep, think, concentrate, read, and breathe when he has panic attacks"); Greenstone v Las Vegas Metropolitan Police Department, 2024 WL 385213, *14, 2024 US Dist LEXIS 17759, *40 [D NV, Jan. 31, 2024, No. 2:23-cv-00290-GMN-NJK) (dismissing ADA claim for monetary damages for failure to show police officer's "deliberate indifference," but finding plaintiffs plausibly alleged incapacitated individual's schizophrenia and major depression that limited ability to communicate and interact and engage in self-care rendered individual disabled under the ADA.)

Footnote 12:See also Watkins v Shriners Hosps. For Children, Inc., 2020 WL 2309468, *5, 2020 US Dist LEXIS 81077, *16 [CD KY, May 8, 2020, No. 5:18-CV-548-REW-MAS] [denying defendant's summary judgment motion where plaintiff alleged in complaint "that breast cancer substantially impaired normal cell growth" and "testified that, at the time of the challenged employment action, she had been diagnosed with a 'very aggressive' form of . . . breast cancer."]; Coker v Enhanced Senior Living, Inc., 897 F Supp 2d 1366, 1375 [ND GA 2012] [granting plaintiff partial summary judgment finding breast cancer meets the definition of "disability" under the ADA, and "in light of the unrebutted affidavit testimony of [p]laintiff's treating physician . . . that [p]laintiff's breast disease is the result of abnormal cell growth and abnormal endocrine and reproductive functioning."] [internal quotation marks and footnote omitted]); Kulasa v Wyndham Vacation Rentals N. Am., LLC, 2021 WL 3832343, *3, 2021 US App LEXIS 26044, *6-7 [10th Cir., Aug. 27, 2021, No. 20-1402] [finding district court did not err in holding plaintiff failed to establish they had a disability and rejecting plaintiff's argument that district court "did not apply the updated standards of the [ADAAA]," as plaintiff "failed to adequately establish any limitations arose out of his ADHD[.]"])

Footnote 13:"All new laws are supposed to be enacted with knowledge on the part of the lawmakers of the existence and scope of the old laws . . . ." Davis v Supreme Lodge Knights of Honor, 165 NY 159, 166 (1900); McKinney's Cons Laws of NY, Book 1, Statutes § 222 ("[W]hen enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject."); Theurer v Trustees of Columbia Univ. in City of New York, 59 AD2d 196, 198 (3d Dept 1977) ("We may assume that the Legislature investigated the subject matter of the legislation and knew how to draft a bill to effectuate their objectives (internal citations omitted).

Footnote 14:See supra n 6.

Footnote 15:Had Belnord been decided today, respondent's alleged disabilities — to wit, speculative hip surgery, a handicapped parking placard, admitted ability to ambulate without assistance and undertake a lengthy commute to her job — would not, in this court's estimation, have warranted a finding of disability under the rent regulations or the ADAAA. Such a finding would be consistent with the Belnord court's conclusion that the drafters of the Rent and Eviction Regulations intended for it to be more restrictive than the State and City Human Rights Laws.